JEFFREY STONE & others[1] vs. RICHARD D. PERKINS & another.[2]

No. 01-P-1015.

Worcester. March 4, 2003. - September 11, 2003.

Present: COWIN, KASS, & GREEN, JJ.

*Adverse Possession and Prescription. Real Property,* Easement. *Easement.*

This court reversed a Superior Court judgment concluding that the plaintiff had acquired a four-foot wide right of way by prescription over the defendants' land but leaving to the parties the determination of precisely where that easement of passage by foot would be located. [266-268]

CIVIL ACTION commenced in the Superior Court Department on August 30, 1996.

The case was heard by *Charles J. Hely,* J.

*Michelle J. Blair* for the defendants.

KASS, J. Following a jury-waived trial to establish an easement by prescription, a judge of the Superior Court found that the party claiming the easement, the plaintiff Jeffrey Stone, had not "proven any particular location where the prescriptive easement crosses the defendants' land." That finding defeats Stone's claim because, under the authority of *Hoyt* v. *Kennedy,* 170 Mass. 54, 56-57 (1898), a person may not acquire an easement of passage by prescription that is not substantially confined to a regular and particularized route. We, therefore, reverse the judgment that concluded Stone had acquired a four-foot wide right of way by prescription over the land of the defendants, Richard D. and Julie C. Perkins, but left to the parties the determination of precisely where that easement of passage by foot would be located.

---

[1] Ernest J. Smith, III; Brenda J. Mathieu; Robert Mathieu; Theodore Baker; and John Perko. None of those parties established rights against the defendants at trial, and they are not involved in this appeal.

[2] Julie C. Perkins.

*Facts.* We take our facts from the trial judge's findings. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). At the time of trial, Stone lived on property in Lunenberg shown as "Stone #35" on the plan attached as an appendix (we shall refer to it as the "Stone lot"). As a child and, after some absence from the Stone lot, as an adult, Stone walked along Spring Street Extension, a private way shown on the plan, across the land of the defendants, shown as "Locus #65" on the plan to Spring Street (also shown on the plan). We, too, shall refer to #65 as the "Locus." Spring Street ran north to an intersection with Flat Hill Road, a public way. Spring Street Extension led westerly to another public way, Reservoir Road.

Stone was born in 1963 and left the Stone lot in 1982, within less than twenty years even assuming that Stone had begun perambulating on his own motion from the day he was born. He returned to live on the Stone lot in 1986 and resumed walking or bicycling across the Locus.[3] Although he found it to be a close question, the judge found the conduct of Stone and his family members was "sufficient to establish for him a prescriptive easement limited to a footpath right of way across the westerly portion of [the] defendants' land at no particularly defined location on [the Locus]."

*Discussion.* Acquisition by prescription of a right of way over land of another requires continued, uninterrupted use of that easement for twenty years. G. L. c. 187, § 2. "[W]herever there has been the use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and will be sufficient to establish title by prescription and to authorize the presumption of a grant unless controlled or explained." *Truc* v. *Field,* 269 Mass. 524, 528-529 (1930). *Tucker* v. *Poch,* 321 Mass. 321, 324 (1947). As with adverse possession, the use must be open, notorious, continuous, and adverse. *Ryan* v. *Stavros,* 348 Mass. 251, 263 (1964). *Boston Seaman's Friend Soc.* v. *Rifkin Mgmt., Inc.,* 19 Mass. App. Ct. 248, 251 (1985).

---

[3]During Stone's absence, his parents continued to live at the Stone lot, and Stone would occasionally visit there with his own children. Although the judge made no such express finding, it is implicit in his conclusions that he found members of the Stone family walked across the Locus during the years Stone was away, and thereby maintained a continuity of adverse use.

Prescinding from the question whether the record supported the finding that use by other family members of the footpath over the locus overcame the break between 1982 and 1986 in the continuum of Stone's passage over the Locus, there remains the problem raised by the judge's finding that the passage was over no particular location. To deal with that uncertainty, the judge formulated a judgment that Stone had acquired a right to travel by foot over a way four feet wide and that required Stone and the Perkinses "to make reasonable accommodations to one another regarding the location and use of the path so that it will make only the minimum intrusion on the defendants' use of their land."[4]

As suggested in the opening, that pragmatic resolution of the parties' quarrel is not supported by our cases. Persons may not claim a right to pass generally over premises "wherever it is most convenient to themselves, and least prejudicial to the owner plaintiff." *Jones* v. *Percival*, 5 Pick. 485, 486 (1827). In *Starkie* v. *Richmond*, 155 Mass. 188, 196 (1892), the court observed that, "A way imports a right of passing in a particular line, and not everywhere over the premises over which it is claimed." The point was explicated in *Hoyt* v. *Kennedy*, 170 Mass. 54, 56-57 (1898):

> "A way imports of necessity a right of passing along a particular route between certain termini. Passing over a tract of land in various directions at different times from year to year not only has no tendency to establish a right over a particular route, but would seem to be inconsistent with such a claim. . . . To establish a way by prescription, the use must be, not only open, adverse, uninterrupted, peaceable, continuous, and under a claim of right, but must be confined substantially to the same route, and to substantially the same purpose for which the way was designed originally, unless the way is one for all purposes."

---

[4]The judgment was not without some direction about the path of the easement by prescription. It stated that the easement was "across the western side of the property of the defendants" and that it began at the south property line of the defendants "near their south garage foundation wall, then west to at least the end of that wall, then north to Spring St. along a mutually convenient path between the defendants' west garage foundation wall and the defendants' west property line."

That principle has not lost its vitality in the more than one hundred years that followed. So it is that the Restatement (Third) of Property § 2.17 (1998), considering the requirements to establish a servitude by prescription, observes in comment h that, "[c]laims for rights of way must be based on uses that are substantially confined to a regular route." See *Vigeant* v. *Donel Realty Trust*, 130 N.H. 406, 410 (1988) (failure to establish the precise location of a way cited as one of several reasons that a prescriptive easement had not come into existence); Bruce & Ely, The Law of Easements and Licenses in Land § 5:11 (2001). Contrast *Consoli* v. *Catania*, 6 Mass. App. Ct. 862 (1978), in which the route of a way acquired by prescription was sufficiently definite.

In the case of instruments that create an easement of way but fail to locate its bounds, the rule is otherwise; in such a case a court may fix the location of the way on the servient premises. *Mahoney* v. *Wilson*, 260 Mass. 412, 414 (1927). *Cheever* v. *Graves*, 32 Mass. App. Ct. 601, 605-606 (1992). When parties have expressed in a deed or other instrument intended to create rights in real property an intent to establish an easement, then it is appropriate that a court assist in giving meaning to the instrument and the intention of the parties, as a court does in interpreting incomplete or insufficiently precise terms of a contract. When, however, someone claims the right to burden real property through conduct only, the absence of a definite location renders doubtful whether the adverse use was sufficiently notorious and continuous to place the potentially servient landowner on notice of the adverse right that is maturing.

The judgment is reversed. The order to the parties to establish the location of a way least burdensome to the servient land is vacated. Judgment shall enter that Stone has no right to pass and repass over the Locus.

*So ordered.*